**UNITED STATES of America, Plaintiff,**

v.

**FALSTAFF BREWING CORPORATION and Narragansett Brewing Company, Defendants.**

**Civ. A. No. 3523.**

United States District Court,
D. Rhode Island.

Oct. 7, 1971.

Lincoln C. Almond, U. S. Atty., Providence, R. I., Philip F. Cody, Bruce Repetto, Kenneth A. Sagat, Norman H. Seidler, Attys., Dept. of Justice, Anti Trust Dept., New York City, for plaintiff.

Matthew W. Goring, George M. Vetter, Jr., James K. Irvin, of Hinckley, Allen, Salisbury & Parsons, Providence, R. I., for Falstaff and Narragansett.

James S. McClellan, Jerome M. McLaughlin, of Willson, Cunningham & McLaughlin, St. Louis, Mo., for Falstaff.

OPINION

DAY, District Judge.

This is an action brought by the United States pursuant to the provisions of Section 15 of the Clayton Act, 15 U.S.C. § 25, for declaratory and injunctive relief to enjoin the proposed acquisition by Falstaff Brewing Corporation (Falstaff) of all the assets of Narragansett Brewing Company (Narragansett) on the ground that the effect of the proposed acquisition may be substantially to lessen competition in violation of Section

7 of the Clayton Act, 15 U.S.C. § 18.[1] As appears from the allegations of the Government's complaint and the evidence presented during the trial of this action, Falstaff and Narragansett, on May 26, 1965, had executed an "Agreement Pursuant To Plan Of Complete Liquidation" under the provisions of which Falstaff would acquire all the assets and assume the debts and liabilities of Narragansett on July 15, 1965.

The instant action was filed on July 13, 1965. In its complaint the Government sought a temporary restraining order and a preliminary injunction enjoining the defendants from consummating said acquisition agreement. I declined to grant said temporary restraining order and after a hearing on July 14, 1965, denied the Government's prayer for a preliminary injunction against Narragansett. At that time service of process had not been made upon Falstaff. On July 15, 1965, Falstaff acquired the assets and assumed the debts and liabilities of Narragansett. Service of process was made on Falstaff on July 21, 1965 at St. Louis, Missouri, where its principal place of business was located.

Subsequently Narragansett's motion to dismiss this action as to it was granted and Falstaff agreed to maintain Narragansett as a separate wholly-owned subsidiary until otherwise ordered or permitted by this Court. Extensive pre-trial discovery was then conducted by the parties. Finally, on May 18, 1970, an order was entered by this Court that all said discovery should be completed not later than June 30, 1970.

Trial upon the plaintiff's prayer that Falstaff be required to divest itself of Narragansett began on October 6, 1970 and was concluded on October 15, 1970. At the conclusion thereof I reserved decision pending the filing of briefs by counsel for the parties and the preparation of the transcript of the evidence presented during the trial. These briefs were subsequently filed and have been carefully considered by me.

The Government contends that Falstaff's acquisition of all the assets of Narragansett violates the provisions of said Section 7 of the Clayton Act because it will substantially lessen competition in the New England beer market, so-called, by eliminating the potential competition that would have been created and would have existed if Falstaff entered said market independently. It further contends that at the time of said acquisition Falstaff was a potential entrant into said market. Falstaff denies that it was a potential entrant into said market and denies that it would have entered said market except by acquiring Narragansett, which had an established, strong and viable distribution system that would assure an adequate distribution of its brand of beer.

The evidence adduced at trial establishes the following facts. Said New England beer market comprises the six New England states. Said beer market at the time of said acquisition was a highly competitive market. Narragansett was then the largest seller of beer in said market with approximately twenty (20) per cent of the sales therein. It had a strong, viable distribution system. Falstaff had its principal brewery in St. Louis, Missouri, and owned several smaller breweries elsewhere, of which the nearest to New England was located in Fort Wayne, Indiana. Falstaff was not a national brewer but was desirous of eventually attaining national status by penetrating the northeastern metropolitan market. The evidence also establishes that its management was firm-

---

1. Section 7 reads in pertinent part as follows:

"No corporation engaged in commerce shall acquire, directly or indirectly, the whole or any part of the stock or other share capital and no corporation subject to the jurisdiction of the Federal Trade Commission shall acquire the whole or any part of the assets of another corporation engaged also in commerce, where in any line of commerce in any section of the country, the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly."

ly committed against attempting to penetrate said northeastern metropolitan market until it could obtain a strong, viable distributor organization therein.

The opportunity to secure such a distributor organization in New England was presented in 1964 when the Haffenreffer family, the owners of Narragansett, motivated by increasing competitive pressure from national brewers in the New England beer market and the desire to lend diversity and security to their personal estates, contacted officers of Falstaff with the view of selling its assets to Falstaff. As hereinbefore recited, the evidence establishes beyond doubt that the New England beer market was then characterized by intense, vigorous competition. The evidence further establishes that since Falstaff's acquisition of Narragansett on July 15, 1965, there has been no diminution of the intensity and vigor of said competition. It further establishes that Narragansett's share of the New England beer market had been reduced from 21.5% in 1964 to 15.5% in 1969, while the combined shares of the two leading national brewers (Anheuser-Busch and Schlitz) in said market had increased from 16.-5% to 35.8%.

■ It is well settled that post acquisition evidence is admissible in an action such as this and may properly be considered in determining whether the probable effect of said merger will be a substantial lessening of competition in said New England beer market. United States v. Pabst Brewing Co., 384 U.S. 546, 86 S.Ct. 1665, 16 L.Ed.2d 765 (1966); F. T. C. v. Consolidated Foods Corp., 380 U.S. 592, 85 S.Ct. 1220, 14 L. Ed.2d 95 (1965); United States v. E. I. du Pont de Nemours & Co., 353 U.S. 586, 77 S.Ct. 872, 1 L.Ed.2d 1057 (1957). In this case there is no evidence that Falstaff during said period did not make every effort to realize the benefits it hoped to obtain by the acquisition of Narragansett.

■ The Government's contentions that Falstaff at the time of said acquisition was a potential entrant into said New England market, and that said acquisition deprived the New England market of additional competition are not supported by the evidence. On the contrary, the credible evidence establishes beyond a reasonable doubt that the executive management of Falstaff had consistently decided not to attempt to enter said market unless it could acquire a brewery with a strong and viable distribution system such as that possessed by Narragansett. Said executives had carefully considered such possible alternatives as (1) acquisition of a small brewery on the east coast, (2) the shipping of beer from its existing breweries, the nearest of which was located in Ft. Wayne, Indiana, (3) the building of a new brewery on the east coast and other possible alternatives, but concluded that none of said alternatives would have effected a reasonable probability of a profitable entry for it in said New England market. In my considered opinion the plaintiff has failed to establish by a fair preponderance of the evidence that Falstaff was a potential competitor in said New England market at the time it acquired Narragansett. The credible evidence establishes that it was not a potential entrant into said market by any means or way other than by said acquisition. Consequently it cannot be said that its acquisition of Narragansett eliminated it as a potential competitor therein.

■ I also find that the Government has failed to establish by a fair preponderance of the evidence that said acquisition by Falstaff will probably result in a substantial lessening of competition in the New England beer market. Section 7 of said Clayton Act is concerned with probabilities, not mere possibilities. Brown Shoe Co., Inc. v. United States, 370 U.S. 294, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962). It is my considered opinion that said acquisition by Falstaff will serve to improve the competitive position of the Narragansett brand of beer in the New England beer market which is intensively competitive, and enable it

to compete successfully with the brands of large, national breweries which dominate said market.

Finding, as I do, that it is not probable that said acquisition of Narragansett by the defendant Falstaff may substantially lessen competition in said New England beer market, judgment must be and will be entered in favor of the defendant Falstaff Brewing Corporation.